Freeman v. Ruston.

---

*214]                          *FREEMAN *v.* RUSTON.
### *Ca. sa.—Lien of judgment.*

The lien of a judgment on the defendant's real estate is suspended, during his imprisonment on a *ca. sa.* ; and if the land be sold, under the execution of a junior judgment-creditor, pending such imprisonment, the plaintiff in the *ca. sa.* is not entitled to participate in the proceeds of the sale, though the debtor be subsequently discharged under the insolvent law.

*Venditioni Exponas.* A rule being obtained on the sheriff of Philadelphia county, to bring into court the money levied on this execution ; another rule was also entered, to show cause why Samuel Coates should not receive, out of the money, an equal dividend or proportion with other judgment creditors, whose judgments were entered on the same day, and who had not issued writs of *ca. sa.* And thereupon, a case was stated for the opinion of the court, comprising the following facts :

---

Freeman v. Ruston.

" On the 21st day of March 1796, Samuel Coates obtained a judgment in the supreme court against Thomas Ruston. A writ of error was taken out by the defendant, returnable to July 1797, and judgment affirmed in the high court of errors and appeals ; and the record being remitted, a *ca. sa.* was sued out of the supreme court, returnable to December 1797, on which (and other writs of *ca. sa.* issued at the suit of other plaintiffs), the defendant was committed to jail ; and remained in custody until the 21st day of November 1798, when he was discharged from confinement, by virtue of the several acts of assembly for relief of insolvent debtors, for the benefit of all **of** which he petitioned.

" Prior to his said discharge, the above *venditioni exponas* was issued, returnable to September term 1798 ; and on the 12th day of July 1798, certain messuages, &c., were sold by the sheriff, by virtue of the said execution, for $13,320. The purchasers at these sales were themselves judgment-creditors of the said Thomas Ruston. The sum of $11,451 was paid on account of the purchases, before the discharge of Dr. Ruston ; and the purchasers have retained in their hands $1869, part of the purchase-moneys, on account of their own judgments ; which judgments are, however, subsequent in *date to that of Mr. Coates ; but no writs of *ca. sa.* were ever issued [*215 out thereon. The sheriff has paid sundry prior judgments out of the proceeds of the sales ; and there remains in his hands, or within his power, the sum of $8866.17, including the balance of $1869, which the purchasers have retained on account of their judgments as aforesaid. All of which, however, for the purposes of this agreement, are considered as being in court, and liable to such distribution as the court shall direct.

" If the court shall be of opinion, that Samuel Coates is entitled to an equal dividend or proportion of the said moneys, with other creditors by judgment of the same date, who have not issued writs of *ca. sa.*, then the rule to be made absolute, and the parties in case of disagreement, as to the sums and portions, agree to appoint three men to determine their proportions."

*Rawle*, on behalf of Samuel Coates, referred to the 17th and 19th sections of the act of assembly(*a*), under which Ruston had *been dis-   [*216 charged as an insolvent debtor (4 Dall. Laws, 274), and contended,

---

(*a*) Sect. 17. " That no debtor, who shall obtain an order of discharge as aforesaid, shall, at any time thereafter, be imprisoned by reason of any judgment obtained for payment of money only, or for any debt, damages, costs, sum and sums of money, contracted, accrued, occasioned, owing or growing due, before the date of the said debtor's deed or assignment, but that upon every arrest upon such judgment, or for such debt, damages, costs, sum and sums of money, it shall and may be lawful for any judge of the court, where the process issued, upon showing a copy of the order of discharge, certified by the clerk of the court where the same is recorded, under seal of office, to release and discharge the said debtor out of custody, and the said judge is directed so to do, so that the said debtor, if arrested or detained on mense process, do give a warrant of attorney to appear to the action or actions on which he is so arrested or detained, and to plead thereunto : Provided, that the discharge of any debtor by virtue of this act,[1] shall not acquit any other person from any debt, sum or sums of money, or any part tnereof, but that all other persons shall be answerable for the same, in the **same** manner as before the passing of this act, and all mortgages, judgments and exe

[1] The word " act" is omitted in the original law.

Freeman v. Ruston.

that by the force of the terms there used, the judgment continued a lien, upon the debtor's discharge, notwithstanding a *ca. sa.* had been previously issued. Indeed, a judgment is constituted a lien by the constitution and laws of Pennsylvania, in the nature of a mortgage, and it must ultimately be satisfied out of the real estate, without regard to the process, either against person or goods, to which a plaintiff may first resort. (1 Dall. Laws, 262.) The law in England is different. There, a *ca. sa.* was considered so complete a satisfaction, that if the debtor died in prison, the creditor had lost all remedy, until the statute of 21 *Jac. I.*, c. 24, was enacted to afford him relief. But there are sufficient reasons for the difference. In England, real estate cannot be sold for the payment of debts, as it may in Pennsylvania. In England, too, the insolvent acts are gratuitous and occasional, temporary in duration, and restricted in objects; but in Pennsylvania, they are constitutionally ordained, permanent and universal. (Const. Art. IX., § 16.)

*W. Tilghman*, for the assignees of Ruston, contended, that Coates had lost the lien of his judgment, by issuing a *ca. sa.* That a *ca. sa.* amounts to a legal satisfaction of the debt, is the settled law of England ; and there is no reason to depart from it here. *Bloomfield's case*, 5 Co. 86 ; Hob. 56–62. Nor can the terms or the principles of the insolvent law affect the case. The sheriff's sale was made on the 12th of July 1798, and Ruston was not discharged until the 21st of November following, before which the greater part of the purchase-money had been actually paid to the sheriff. The state of the fact and the law, when the property was sold and the price received, must govern the decision, not matter arising *ex post facto*. And the act of assembly, when it provides for the distribution of the lands of the debtor, at the time of his discharge, can never be fairly construed, retrospectively, to unravel, revise and cancel sales and payments, and distributions, all regular at the time that they occurred. It is true, that the 17th section of the act continues in force all judgments by which the debtor was bound, at the time of his discharge; but if the *ca. sa.* against the person

---

cutions, whereby the goods and chattels, lands and tenements of the said debtor shall be bound, shall remain good and effectual in law, and shall be first satisfied out of the debtor's estate, according to their priority of lien, in the same manner as if this act had never been passed."

Sect. 19. "That notwithstanding the discharge of any debtor, by virtue of this act, all and every debt or debts, due and owing from such debtor, and all and every judgment and judgments had and taken against him, shall stand and be good and effectual in law, to all intents and purposes, against the lands, tenements, hereditaments, goods and chattels of such debtor, which he, or any other person or persons in trust for him, at the time of his assignment, hath or have, or at any time thereafter shall or may be any ways seised or possessed of, interested in, or entitled to, in law or equity, except the necessary wearing apparel and bedding for himself and his family ; and if he be a mechanic or manufacturer, his tools, not exceeding in value the sum of fifty dollars ; and it shall and may be lawful for any of his creditors, or his or their executors or administrators, to take out a new execution against the lands, tenements, hereditaments, goods and chattels of such debtor, except as before excepted, for the satisfaction of their debts respectively, in the same manner and form as they might have done, if the said debtor had never been taken in execution, any act, statute, law or custom to the contrary notwithstanding."

extinguished the lien upon the estate (which is the very point to be decided), then Ruston was not bound by Coates's judgment, at the time of his discharge ; and such is the necessary exposition of the law, when \*the 17th and 19th sections are considered together, as to the fund, the existing fund at the time of discharge, which is to be distributed among the creditors. The adverse doctrine would give the execution-creditor two remedies, contrary to the principles of the common law : it would open a door for collusion between the debtor and his *ca. sa.* creditor, and it would involve the relative rights of creditors in endless perplexity and uncertainty, whenever an insolvency of a debtor happened or even the prospect of it was in view. [*217

By THE COURT.—The case appears so clear to us, that we do not wish another moment for consideration. The law is settled in England, that a *ca. sa.* operates as a satisfaction of the debt, as an extinguishment of the lien of the judgment. We have no other rule prescribed to us in Pennsylvania, nor can we conceive that there would be any policy or justice in departing from it. Ruston was in actual custody upon Coates's *ca. sa.*, when the land was sold. He had no lien, no claim, to the proceeds of the sale, at that time ; and we can perceive nothing in the fact or the law of the case, which has since revived his old right, or given him a new one, to the land itself, or to any part of the purchase-money. *(a)*

The rule must, therefore, be discharged.

---

## *DECEMBER TERM, 1800. [*218

---

(a) The arrest of a debtor under a *ca. sa.* does not satisfy the debt, if he has been discharged from custody as an insolvent debtor, but if he has been released from such imprisonment, by his creditor, the debt is extinguished. Sharpe *v.* Spackenagle, 3 S. & R. 465; Palethorpe *v.* Lesher, 2 Rawle 272.

